Common Pleas Court of Hamilton County.

## EX PARTE EMIL FRANK.

Decided October 26, 1932.

*Moulinier, Bettman & Hunt, Harmon, Colston, Goldsmith & Hoadly,* for petitioner.
*Peck, Shaffer & Williams,* for respondent.

MORROW, J.

The plaintiff, a corporation located in Hamilton county, has sued the defendant corporation, located in Butler county. The suit was filed, however, in Montgomery county.

The plaintiff complains that it bought of defendant paper board liners for caps of peanut jars, which were warranted not to contaminate the peanut butter in the jars, but that such liners did so contaminate. Furthermore, plaintiff states that it delivered large quantities of peanut butter so contaminated by the defendant's paper board liners before discovering the contamination and reason therefor. It further states that complaints were received from customers; the peanut butter so contaminated was returned to the plaintiff, and that its business, goodwill and reputation had been damaged by reason of said defective liners and defendant's breach of warranty in the sum of $148,500.00, there being included in said sum such items as costs, expenses and losses incurred, as well as loss of profits on prospective sales.

Defendant was served and entered appearance, but did not answer petition. In the meantime defendant procured a notary public to obtain appearance of Emil Frank, Vice-President of the plaintiff company, for the taking of testimony by deposition in Hamilton county. A subpoena *duces tecum* requests the production by him of certain records, which will be referred to hereafter.

Upon appearance of Emil Frank, with counsel but without the records requested, it develops that upon advice of counsel he refuses to divulge certain information requested of him as upon cross-examination of the officer

of a corporation party to a law suit, and that his failure to produce certain documents requested was also upon advice of counsel.

Can he be compelled to answer questions submitted and produce the documents requested?

First, as to preliminaries:

Notwithstanding Judge Peck in argument made a passing reference to the possibility of the death of the petitioner Frank, I take it that we are concerned here with a deposition *de bene esse,* and that this is not a proceeding for the perpetuation of testimony; that is to say, the depositions are taken provisionally, "they are not considered as introduced in evidence at the time of taking, but are intended to be introduced at the trial held subsequently thereto in the event the personal attendance of the witness, for oral examination, cannot be secured." See 1 Bouvier Law Dictionary, Rawles 3rd Revision, page 759. See also 14 Ohio Jurisprudence, Section 1, p. 7.

Second: There is a distinction between the right to take depositions and the right to use the same, "the right to take being in such cases a precautionary privilege to prevent the loss of the evidence in the event the attendance of the witness at the trial cannot be secured." A witness cannot refuse to give his deposition upon the ground that he is in good health and that he intends and expects to be present at the trial. See 14 Ohio Jurisprudence, Sec. 5, page 10 and cases cited thereunder.

Third: "The burden of showing an abuse of process in the taking of a deposition rests upon the party who resists the taking." See 14 Ohio Jurisprudence, Sec. 5, page 11 and cases cited thereunder.

Fourth: Counsel for petitioner object that the taking of this deposition is merely a fishing expedition. The fact that this deposition might be characterized as such, that is, "for the purpose of ascertaining the evidence of the other party, and that there is no *bona fide* intention or expectation of using it on the trial of the case, does not of itself, justify a witness, whether a party to the action or proceeding or not, in refusing to be examined by deposition. Before this doctrine became finally established, however, the opposite conclusion had been reached in several decisions in the courts of common pleas and in

one circuit court decision." See 14 Ohio Jurisprudence, Sec. 6, pages 11 and 12, and cases cited thereunder.

In this connection and as an authority addressed not only to this preliminary statement, but as one that we endorse as bearing upon a larger view of the case, we desire to quote from Judge Taft's opinion while on the Superior Court of Cincinnati, in the case of *Philip V. Shaw* v. *The Ohio Edison Installation Company, et al.*, Vol. 17, Weekly Law Bulletin, page 274, 276:

"There is likely to be no motive for 'fishing' unless the person whose deposition is sought has been unwilling to state this knowledge upon inquiry. If a witness is so reluctant as not to state his knowledge to the party asking it, the witness cannot complain if the party presumes that the knowledge thus withheld may be useful evidence to him on the trial of the case, and that his refusal to give information indicates a desire to avoid the trial. Witnesses do not belong to one party more than to another. What they know relevant to the issue should be equally available to both sides, and if they claim immunity from examination by deposition on the theory that their testimony is one side's rather than the other's, their claim is utterly indefensible. What a witness is presumed to know is the truth and that cannot vary between the time of taking the deposition and the trial. If there is likely to be a variance in the testimony, the earlier a witness is committed to a statement the better for the sake of the truth. There is no objection that I know, why each party should not know the other's case. Each is supposed to state his case in his pleading in the beginning. By serving notices under Section 5292 Revised Statutes, one party may compel the other to furnish a copy of such papers as he intends to use as evidence. If such is the rule in regard to written evidence, it is hard to see that it is a great objection to our construction of Section 5266 that it may in some cases enable a party to take depositions which will disclose the evidence which his adversary will produce."

See also in this connection *In Re Nushuler*, 4 Oh. D., Reprint, 299; 3 Bulletin 739.

Notwithstanding what is said in the leading case in this state bearing upon the instant question (*Ex Parte Schoepf*, 74 O. S., 1) and the inferior standing of the Shaw case, above quoted, as a Nisi Prius decision, we feel that Judge Taft's reasoning, as above stated, has an important bearing upon the larger aspects of the question before us.

However, counsel for petitioner states (page 5 of brief) :

"Ex Parte Schoepf lays down the rule in force in Ohio and completely sustains position taken by witness on advice of counsel."

We are not concerned with the statement of law in Syllabus 3 of Ex Parte Schoepf. Syllabus 3 denies right to plaintiff to have production made of a report of accident made by the conductor and motorman to the company's claim agent on the ground that such report is a privileged communication. The report was a "privileged communication" because it

"was made for the information of the claim agent for the purpose of settlement or for use of counsel in case of suit against the company and such report remained in the custody of the claim agent until suit was commenced against the company for injury received in such accident, when it was turned over to, and has ever since remained, in the possession of the company's counsel." See Syl. 3 of Schoepf case.

This statement of the law is an adoption of an English rule and the theory is that a document or report made for the use of counsel is a communication between a client and his attorney and therefore privileged.

However, it is not outside the issue to state the general rule in England as to such a situation, which is:

"Reports of employees of railroad corporations or other carriers as to accidents, and the results thereof, made in the ordinary course of duty, or after investigation directed, are not privileged."

See *Baker* v. *London, etc.* R. C. L. R. 3 L. R. Queen's Bench 91, and other authorities collected in Enc. of Evidence, Vol. 4, pages 704 and 705.

"If they fall short of being notes of the case to be laid before counsel, they are not privileged."

See *Fenner* v. *London, etc.* R. R. L. R. 7 Queen's Bench 767; 41 L. J. Q. B. 313; 26 L. T. Rep. 971; 20 Weekly Rep. 830.

"The privilege does not extend to communications had by the client with agents or strangers without the suggestion or direction of the attorney, whether or not litigation is threatened or pending."

See 14 Cyc. 328, *English* v. *Tottle,* 1 L. R. Q. B. D. 141, 45 L. J. Q. B. 138, and other authorities collected there.

In the instant case there is an attempt to develop by a questioning of the officer of a plaintiff corporation the situation with reference to the alleged contamination of plaintiff's product by use of goods bought of defendant, involving the names of customers who claimed their goods were contaminated, and generally speaking, the facts and elements which allegedly pertain to the damages incurred by plaintiff by reason of the breach of warranty on the part of the defendant. There is no question of privilege here because there is no intimation in the record that the information requested orally or by means of the subpoena *duces tecum* was compiled or obtained at the suggestion or direction of counsel for plaintiff. As far as the proposition set forth in Syllabus 3 of Ex Parte Schoepf, what is sought in the instant case has not come with the rule laid down therein.

We are concerned, however, with the statements made in Syllabi 1 and 2 in Ex Parte Schoepf. Syllabus 1 states in substance that evidence adduced by deposition must be limited to

"Evidence pertinent to the issue, in cases and under circumstances where a party might heretofore have been compelled to produce the same by the ordinary rules of proceeding in chancery."

Syllabus 2 states:

"The rule in chancery as to compelling the production of documents for the purpose of evidence and inspection was and is that a party is entitled to a discovery of such facts or documents in his adversary's possession or under his control, as are material and necessary to make out his own case; but that this right does not extend to a discovery of the manner in which the adverse party's case is to be established, nor to evidence which relates exclusively to the adverse party's case."

Will the production by deposition of the information sought to be obtained here by defendant "extend to a discovery of the manner in which the adverse party's case is to be established, or to evidence which relates exclusively to the adverse party's case?"

The rule in chancery as stated by our Supreme Court might be amplified by the following statement in Encyclopedia of Evidence, Vol. 4, page 706:

"Matters in common to case of both parties: It is sometimes difficult to draw the line of distinction between what constitutes the complaint's case and what constitutes the defendant's. There are cases in which the matters in question may be common to both and in such case the rule concedes to the complainant the right to a discovery directed to facts material to the issue and for the purpose of rebutting the evidence which is necessary to sustain the defendant's principal relief."

See *Atlantic Ins. Co.* v. *Lunar*, 1 Sanf. Ch. (N. Y.) 91, and other cases cited therein.

In the case of *Glasscott* v. *The Governor* and *Company* of the copper mines of England, 11 Sim. 305, Vice Chancellor Shadwell held that a defendant at law may file a bill of discovery not only to sustain his defense to the case, but to rebut the evidence in support of it.

It is also said in 14 Cyc. page 343, under the head of "Discovery";—

"An examination may be had before trial for the purpose of obtaining facts necessary to enable a party to frame his answer."

14 Cyc. 371, sets forth:

"But where books and papers are material to the case of the applicant, it is no objection to their production or inspection that they relate also to the case of his adversary."

In the instant case the precise questions passed upon in the first and second syllabi of Ex Parte Schoepf are not present. It is not a mere use of words but a firm distinction to say that in the Schoepf case it was attempted to obtain evidence consisting of the names of witnesses to the transaction, and the statements made by these witnesses concerning that transaction, (which was the basis of the law suit) ; whereas in this case it is not attempted to elicit names, but rather issuable facts which happened to be names. Here the names themselves are evidence. In the Schoepf case names were requested and information re-

quested, because those names and that information might be used to discover a version of the transaction in question which constituted the defense of the defendant.

In passing I might state that it makes no difference whether the party seeking depositions is the plaintiff or defendant. The rules are the same.

In the instant case it is not sought to develop the plaintiff's version of the transaction in question; but rather, the names of customers, amount of peanut butter contaminated, the sources of purchase by plaintiff company of the peanuts whereof the butter was made, are all evidential facts defendant is entitled to develop in its defense.

The defendant's case is primarily combatting the plaintiff's case, and under a general denial it is competent for defendant to show that the customers of the plaintiff have not complained of contamination, that the bad peanut butter resulted from the purchase of *inferior peanuts,* as was sought to be established by certain questions and records, or even that the amount of contamination and the damage was less than is claimed.

In short, we do not think it is accurate to state that the defendant in this case is abusing its rights to obtain evidence by deposition, for the reason that it is attempting a discovery of the manner in which the adverse party's case is to be established; because in our opinion, it is asking here for evidential facts, and not for a version or relation of those facts in possession of the plaintiff.

Also, the evidence sought to be adduced by deposition does not relate exclusively to the plaintiff's case. While it is true that the defendant had filed no pleading, its counsel stated in open court that it expected to file a general denial, and the depositions are not prematurely taken, because the statute provides (Section 11526) that they may be taken any time after service upon defendant.

It seems to us that although it may be technically described as the proof of a negative, nevertheless a defendant in the development of his case under a general denial, where damages are demanded by plaintiff, may under such general denial go into the enemy's camp and show that the situation whereby damages are alleged to have arisen did not exist.

Because counsel for defendant in open court has advised

that he expects to file a general denial, and because the depositions sought to be taken are not prematurely requested, we are considering this case as if the defendant had filed a formal general denial and so taken issue.

Is the evidence sought to be adduced "evidence which relates exclusively to the adverse party's case," and confined to "a discovery of the manner in which the adverse Party's case is to be established," quoting from syllabus 2 of the case Ex Parte Schoepf?

What evidence is admissible under a general denial in Ohio? The documents and oral information requested here relate to the measure of damages, and apparently the defendant desires by the records and admissions of plaintiff's officer to show that the damages do not aggregate the amount claimed, and also, it is hinted by some of the questions that the damage allegedly incurred was the result of the purchase by plaintiff of inferior or spoiled peanuts.

In the first place, I take it that on cross-examination of Mr. Frank, assuming that the same was had in the actual trial, the questions which defendant is seeking to have answered here would be competent, relevant and material, and the documents sought would be compelled to be produced by the court at the trial. Why cannot Mr. Frank be compelled to do by deposition out of court what he could be compelled to do in court, in the matter of production of evidence?

Kinkead's Code Pleading, Vol. 1, Section 70-a, page 173:

"The general rule governing the admission of evidence under a general denial may be stated in a few words, the difficulty being in its application to cases. As has already been explained, a general denial controverts all the essential averments made by the plaintiff which he must prove to maintain his cause of action, so that it necessarily follows that a defendant has the right to introduce under such denial any evidence tending to disprove anything which the plaintiff is bound in the first instance to prove to make out his cause of action. A distinct, affirmative defense can not be given in evidence, under a general denial, but defendant is limited to a contradiction of plaintiff's proofs, and the disproval of his case. * * * New matter is where the matter set up by plaintiff is admitted, and the facts alleged by plaintiff avoids it, not where the matter set up by defendant denies plaintiff's allegations."

It is true that under the general denial the latitude is less than is allowed to be pled under the general issue in common law pleading, but nevertheless the evidence sought here we consider well within the bounds of production under the code general denial. As a matter of exclusion see Judge Smith's opinion on the abuse of the general denial in *Packet Co.* v. *Fogarty*, 9 C. C., page 418, at page 420. See also Bates' Pleading, Practice, Parties and Forms, Section 320, page 279, in which it is stated in substance that where defense consists of evidence directly contradicting allegations of plaintiff, a general denial is proper.

Second. If the defense consists of affirmative matter which is directly contradictory to and inconsistent with the particular facts which plaintiff must prove to make out a case such affirmative matter is admissible under a mere negation of the petition, because it and the plaintiff's proof cannot both be true.

(This latter statement might apply to the attempted development that spoiled or inferior peanuts were purchased by the plaintiff and that these made up the shipments complained of.) Bates also states that the general rule is easy of statement and of comprehension, but that application is not easy to make at all times, and instances that certainly a confession and avoidance plea should not be sought to be introduced under a general denial, but should be specially pled.

We must confess to have quoted text books in this memorandum more than specific cases, because we seem to by dealing with broad principles laid down long since.

In conclusion, we find,

First, that the proposition stated in syllabus 3 of the Schoepf case is beside the issue;

Second, while the rule in chancery referred to in syllabi 2 and 3 refers to information elicited from a party to the suit, and while what is sought to be obtained here is to be derived from an officer of the plaintiff corporation, we do not think that this fact should negative the force of the Schoepf case as an authority if the same is applicable, for the reason, of course, that a corporation can only function through agents, and the records sought

in this instance are of the corporation party plaintiff. However, the rule in chancery referred to in syllabi 1 and 2 of the Schoepf case compels the corollary (heretofore cited) that matters in common in the case to both parties may be inquired into by deposition; and this right to a discovery exists nothwithstanding that incidentally the other side's case may be developed thereby.

Third: The objection that defendant is embarking on a "fishing expedition" is no longer a bar in this state to the taking of depositions.

Fourth: Because a law suit is not a judicial game of hide and seek, we are impressed with the high purpose that motivated Judge Taft's decision in the case quoted above and feel that the same reasoning should apply here.

Frank's attendance at the trial cannot be enforced. The Ohio Code authorizes the taking of depositions where service has been accomplished, and in the interest of expedition we are taking statement of counsel that a general denial will be filed, as tantamount to such pleading.

In the interest of truth and justice we consider that defendant should have right to develop his defense—a contradiction of plaintiff's case,—by the deposition of the witness whose presence cannot be enforced at the trial.

Assuming that the names of the complaining customers are non-existent, are not as numerous as alleged, that the damages are not in any amount, or in the amount alleged, or even that spoiled peanuts were the cause of the damage, and not defendant's liners, and that this could be developed by testimony of Frank and correspondence in his hands, defendant should have the right to adduce such evidence before trial by deposition. In short, such evidence, namely, records of plaintiff's shipments of peanut butter with defendant's liners, is evidence of defendant as well as of plaintiff. Being evidence of such dual nature and utility, its production now from a witness whose presence cannot be enforced at the trial is neither premature, unfair, contrary to the rules of chancery, nor opposed to the Ohio statutory and case law.

We submit therefore that the petitioner was committed properly and should be remanded to custody.